OPINION OF THE COURT
Daniel R. Palmieri, J.
The motion by defendants County of Nassau and the Nassau County Traffic and Parking Violations Agency (jointly County) for an order pursuant to CPLR 3211 (a) (1), (5) and (7) dismissing the complaint is granted pursuant to CPLR 3211 (a) (7), which the court treats as one for a declaration in defendants’ favor prior to answer and declares that the driver-responsibility fee as it relates to the red-light camera program is a proper exercise of Nassau County’s power to charge and collect administrative fees.
In this class action, plaintiff seeks, inter alia, a declaration that “[defendants’ driver-responsibility fee as it relates to the red-light camera program . . . [is] ultra vires, unconstitutional; pre-empted, void or otherwise illegal” (complaint ¶ 60 [b]). Plaintiff also alleges that the County has been “unjustly enriched” by the imposition of the driver-responsibility fee and seeks restitution of such fees.
Specifically, plaintiff alleges, and it is undisputed, that
“[o]n December 28, 2015, Mr. Guthart was mailed a Notice of Liability under Nassau’s red-light program. The notice provides the date of the alleged violation, the location of the alleged violation, the due date to make payment for the violation, and the statement: ‘Amount Due: $80,’ and ‘Violation fine $50 + Driver Resp. Fee $30.’
“Mr. Guthart paid defendants $80.”[1] (Complaint ¶¶ 19, 20.)
In County of Nassau v Levine (29 Misc 3d 474 [Nassau Dist Ct 2010, Kluewer, J.]), the court summarized Vehicle and Traffic Law § 1111-b, which authorized the County to initiate a “red-light” camera system program in which owners of vehicles *829 photographed crossing streets against the light were to be fined for the infraction. The statute included the power of the District Court to adjudicate liability thereunder, and Judge Kluewer also noted the County’s determination, through a local law, to have that function of the District Court performed by the Nassau County Traffic and Parking Violations Agency (TPVA). The plaintiff in his complaint does not seek to overturn this section of the Vehicle and Traffic Law, undisputedly directed to improving safety and preventing deaths and injuries by discouraging motorists from running red lights (see Sponsor’s Mem, Bill Jacket, L 2009, ch 19), but rather asks this court to declare that any additional amounts collected by the County are beyond the maximum “liability” imposed for violations, and thus are beyond what the law allows.
In that regard, Vehicle and Traffic Law § 1111-b (e) states that
“[a]n owner liable for a violation of subdivision (d) of section eleven hundred eleven of this article pursuant to a local law or ordinance adopted pursuant to this section shall be liable for monetary penalties in accordance with a schedule of fines and penalties to be set forth in such local law or ordinance. The liability of the owner pursuant to this section shall not exceed fifty dollars for each violation; provided, however, that such local law or ordinance may provide for an additional penalty not in excess of twenty-five dollars for each violation for the failure to respond to a notice of liability within the prescribed time period.”
Nassau County Ordinance 190-2012, amending 16-2011, provides, in pertinent part, as follows as part of the owner’s responsibility upon a finding of a red-light violation: “Final Disposition Other Than Not Guilty Fee (‘Driver Responsibility Fee’) [$]30.00.” The legislative finding supporting the charge is stated in the amending ordinance to be that “the current fee charged to motorists appearing before TPVA whose cases have been adjudicated to a final disposition other than not guilty is currently below the actual cost of adjudicating those cases.”
The question before this court is whether imposing this fee is a proper exercise of the County’s power. The court holds that it is.
Municipal Home Rule Law § 10 provides that
“1. In addition to powers granted in the constitution, the statute of local governments or in any other law . . .
*830 “(ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government:
“a. . . . (9-a) The fixing, levy, collection and administration of local government rentals, charges, rates or fees, penalties and rates of interest thereon, liens on local property in connection therewith and charges thereon.”
The plaintiff contends, however, that the legislature in authorizing the red-light program never intended that there would be charges beyond the $50 and $25 called for as the penalty in Vehicle and Traffic Law § 1111-b (e), pointing to discussions held in the Assembly:
“Mr. Cahill: The $50 fine that is associated with this violation, is that the only charge that a person will suffer as a result of their vehicle going through this; or it is possible that they would be subject to other surcharges under the law?
“Mr. Lavine: No other surcharges. However, in the event that the fines are not paid, the municipality or the county can levy an additional $25 fine.
“Mr. Cahill: But the usual administrative fee that we see sometimes tacked on to the Vehicle and Traffic Law violations do not apply in this instance?
“Mr. Lavine: They do not.” (NY Assembly Debate on A7329, Apr. 6, 2009 at 45-46 [Landau affirmation, exhibit B].)
Notwithstanding the foregoing exchange, however, there is nothing in the language of the statute itself that abrogates the existing and long-standing authority holding that a municipality may impose fees reasonably related to the cost of administering and/or enforcing its own regulations and programs (see Suffolk County Bldrs. Assn. v County of Suffolk, 46 NY2d 613, 619 [1979]; Kencar Assoc., LLC v Town of Kent, 27 AD3d 423 [2d Dept 2006]; Fairhaven Apts. No. 4, Inc. v Town of N. *831 Hempstead, 8 AD3d 425 [2d Dept 2004]; Home Bldrs. Assn. of Cent. N.Y. v Town of Onondaga, 267 AD2d 973 [4th Dept 1999]; see also American Ind. Paper Mills Supply Co., Inc. v County of Westchester, 65 AD3d 1173 [2d Dept 2009]).
It is worth noting that Assemblyman Lavine, quoted above, was the bill’s sponsor in the New York State Assembly, and the Memorandum in Support of Legislation, in the Summary of Specific Provisions section, does refer to a “maximum $50 civil penalty for a violation and no more than $25 for failure to respond” (Sponsor’s Mem, Bill Jacket, L 2009, ch 19 at 7). That is reflected in the statute. However, as with the statute itself, there is nothing in the Memorandum indicating that the County should not be allowed to impose an administrative fee.
Therefore, the interplay on the floor of the Assembly, while of interest as a history leading to the passage of the legislation, does not mandate striking down the fee. The Court of Appeals has stated that “a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature” but has also “correspondingly and consistently emphasized that where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 106-107 [1997] [internal quotation marks, citation and emphasis omitted]).
The plain meaning of the words here do not yield the result the plaintiff seeks. As indicated above, the statute states that motorists “shall be liable for monetary penalties in accordance with a schedule of fines and penalties” (Vehicle and Traffic Law § 1111-b [e] [emphasis added]). The “liability” ceiling of $50 thus clearly refers to “fines and penalties,” forms of punishment, and are fundamentally different from a fee intended to defray costs of the program. Similarly, the $25 charge that could be imposed for a failure to respond to a notice of liability is also stated to be “an additional penalty.” Allegations in the complaint that the program is “highly profitable” and that the fee is no more than a device for raising revenue above what was authorized does not change the foregoing, nor the underlying reasons that the legislature authorized the program in the first instance—public safety and the prevention of death and injury.
Assuming without deciding that the $50 penalty is sufficient to continue operating the program and that the County does not really “need” the administrative fee does not undermine its *832 right to charge it under the authority cited above or render it unconstitutional. “ ‘[A] system that simultaneously raises money and improves compliance with traffic laws . . . cannot be called unconstitutionally whimsical’ ” (Krieger v City of Rochester, 42 Misc 3d 753, 765 [Sup Ct, Monroe County 2013], quoting Idris v City of Chicago, Ill., 552 F3d 564, 566 [7th Cir 2009]).
The court therefore concludes that the statute places all maximum charges in the category of penalties, and does not foreclose charging owners with an administrative fee as permitted by Municipal Home Rule Law § 10 and the decisions cited above.
The plaintiff thus is asking the court to add another restriction to the statutory scheme. “ ‘Courts should not . . . add restrictions or limitations where none exist, nor should they interpret what has no need of interpretation’ ” (Marcus Assoc. v Town of Huntington, 45 NY2d 501, 505 [1978], quoting Matter of Erie County Agric. Socy. v Cluchey, 40 NY2d 194, 200 [1976]). If the legislators wanted to insure that the County would not impose an administrative fee—hardly an unusual action by a municipality—they could have incorporated the prohibition into the law with an additional simple phrase. It simply was not done.
Nor can it be said that the cited charges cannot be imposed under the doctrine of preemption. Local governments have broad authority to enact legislation that promotes the welfare of their citizens, but cannot adopt local laws or ordinances that are inconsistent with the New York State Constitution or with any general state law (Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, 91 AD3d 126, 133 [2d Dept 2011], citing Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991]; see NY Const, art IX, § 2 [c]; Municipal Home Rule Law § 10 [1] [i], [ii]; see also Albany Area Bldrs. Assn. v Town of Guilderland, 74 NY2d 372, 376 [1989]). Accordingly, “the power of local governments to enact laws is subject to the fundamental limitation of the preemption doctrine” (Sunrise Check Cashing & Payroll Servs., Inc. v Town of Hempstead, 91 AD3d at 133; DJL Rest. Corp. v City of New York, 96 NY2d 91, 94 [2001]).
“A local law will be preempted either where there is a direct conflict with a state statute (conflict preemption) or where the legislature has indicated its intent to occupy the particular field (field preemption).” (Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 690 [2015]; see DJL Rest. Corp. v City of New York.)
*833 The court finds nothing in the subject statute to indicate preemption under either conflict or field preemption. The entire section is designed to permit Nassau County to proceed with the subject program, and by not prohibiting the imposition of an administrative fee as a part thereof, the opposite conclusion may be drawn. There is no provision addressing the cost of the program other than a reporting requirement of revenue and expenses found in Vehicle and Traffic Law § 1111-b (n) (8) and (9).
The court therefore cannot find that the plaintiff has been able to overcome the strong presumption of constitutionality that attaches to local laws by overstepping its authority granted under Vehicle and Traffic Law § 1111-b (see generally 41 Kew Gardens Rd. Assoc. v Tyburski, 70 NY2d 325 [1987]; McKinney’s Cons Laws of NY, Book 1, Statutes § 150; cf. Coconato v Town of Esopus, 152 AD2d 39 [3d Dept 1989]).
In view of the foregoing, the court concludes that this case must be dismissed for failure to state a cause of action.
“In deciding a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must accept the facts alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory” (Von Maack v Wyckoff Hgts. Med. Ctr., 140 AD3d 1055, 1056-1057 [2d Dept 2016], quoting Fough v August Aichhorn Ctr. for Adolescent Residential Care, Inc., 139 AD3d 665, 666 [2016]).
“A motion to dismiss a declaratory judgment action prior to the service of an answer presents for consideration only the issue of whether a cause of action for declaratory relief is set forth, not the question of whether the plaintiff is entitled to a favorable declaration” (Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie, 87 AD3d 1148, 1150 [2d Dept 2011], quoting Staver Co. v Skrobisch, 144 AD2d 449, 450 [2d Dept 1988]). Thus,
“where a cause of action is sufficient to invoke the court’s power to ‘render a declaratory judgment . . . as to the rights and other legal relations of the parties to a justiciable controversy’ (CPLR 3001; see CPLR 3017 [b]), a motion to dismiss that cause of action should be denied” (Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie at 1150; see St. Lawrence *834 Univ. v Trustees of Theol. School of St. Lawrence Univ., 20 NY2d 317, 325 [1967]).
A court, however, may reach “the merits of a properly pleaded cause of action for a declaratory judgment upon a motion to dismiss for failure to state a cause of action where ‘no questions of fact are presented [by the controversy]’ ” (Matter of Oakwood Cemetery v Village/Town of Mount Kisco, 115 AD3d 749, 752 [2d Dept 2014], quoting Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie at 1150).
Under such circumstances, “the motion to dismiss the cause of action . . . may be treated ‘as a motion for a declaration in the defendant’s favor and treated accordingly’ ” (Matter of Oakwood Cemetery v Village/Town of Mount Kisco at 752, quoting Siegel, NY Prac § 440 [5th ed 2011]; Matter of Tilcon N.Y., Inc. v Town of Poughkeepsie).
This court finds that plaintiff has properly pleaded a cause of action for a declaratory judgment, but that he has been unable to overcome the heavy presumption of constitutionality that attaches to the local law. The motion to dismiss should be treated as one for a declaration in the County’s favor, and is so declared.
The second cause of action, which seeks unjust enrichment, should be dismissed as well. “The essential inquiry in any action for unjust enrichment ... is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered” (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011], quoting Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972]). A plaintiff must show “that (1) the other party was enriched, (2) at that party’s expense, and (3) that ‘it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered’ ” (Citibank, N.A. v Walker, 12 AD3d 480, 481 [2d Dept 2004]).
In view of the court’s conclusion that the County was empowered to impose an administrative fee, the claim for unjust enrichment cannot stand because it is permitted to retain the fee. Similarly, the third and fourth causes of action, sounding in fraud and negligent misrepresentation,[2] also are based on wrongful imposition of the fee, in that plaintiff alleges that the County knew it could not charge for the ad *835 ditional amount yet told the vehicle owners that they had to pay it. Since the County could do so, these claims are dismissed as well.
All contentions not discussed either are not necessary to the result reached here or are without merit. All requests for relief not specifically addressed are denied.

. Neither party has provided the court with the notice of liability and instructions regarding payment and/or the two ways to contest the violation.

. Although the County refers to only two causes of action (“Counts” in the complaint), the pleading itself contains the four noted.